IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 15-cv-01087-CMA-KLM

CREEK RED NATION, LLC, and HIGHLANDS RANCH YOUTH FOOTBALL ASSOCIATION, a non-profit corporation,

    Plaintiffs,

v.

JEFFCO MIDGET FOOTBALL ASSOCIATION, INC.,

    Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS (DOC. # 18)**

---

Currently before the Court is Defendant Jeffco Midget Football Association, Inc.'s ("JMFA") Motion to Dismiss, which was filed on June 2, 2015. (Doc. # 18.) Plaintiffs Creek Red Nation, LLC ("CRN") and Highlands Ranch Youth Football Association ("HRYFA") responded to JMFA's motion on June 4, 2015. (Doc. # 19.) JMFA did not reply to Plaintiffs' response. For the following reasons, JMFA's motion is granted in part and denied in part.

## I.   BACKGROUND

CRN is "a group of six youth football teams primarily made up of minority children." (Doc. # 1 at 1 ¶ 2.) CRN alleges that, after four years of participation as a member association, JMFA wrongfully expelled CRN. (Doc. # 1 at 2 ¶ 2.) To "save the children of CRN from the expulsion," HRYFA—another participating member of JMFA—

"immediately took in the CRN teams so that the CRN teams could play in JMFA under the HRYFA banner." (Doc. # 1 at 2 ¶ 2.)  Plaintiffs allege that JMFA "then expelled all 24 HRYFA teams, in order to keep out the CRN teams." (Doc. # 1 at 2 ¶ 2.)  Plaintiffs allege that JMFA's actions were based on racial animus. (Doc. # 1 at 6 ¶¶ 32-38.)

In their complaint, Plaintiffs allege violations of 42 U.S.C. § 1981 (claim one), 42 U.S.C. § 1985 (claim two), 42 U.S.C. § 2000a (claim three), and Colo. Rev. Stat. § 24-34-601 (claim four), as well as claims for breach of contract (claim five) and breach of the covenant of good faith and fair dealing (claim six). (Doc. # 1 at 9-12 ¶¶ 58-80.)

## II.   ANLAYSIS

JMFA moves to dismiss Plaintiffs' complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(1) provides that a complaint may be dismissed for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of the plaintiff's claim. Instead, it is a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing that federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Rule 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must set forth "enough facts to state

a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When ruling on a motion to dismiss, the court must accept as true the factual allegations contained in the complaint, but it may not rely on mere conclusions. *Id*. at 555.

### A.     Whether Plaintiffs have standing to bring claims for the alleged violations

JMFA contends that Plaintiffs lack standing to bring claims under 42 U.S.C. §§ 1981, 1985, and 2000a because "they do not allege any immediate or threatened injury to their members, who are the holders of those claimed civil rights." (Doc. # 18 at 4.) Instead, according to JMFA, "Plaintiffs allege only injury to the organizations themselves as a result of their expulsion from [JMFA]." (Doc. # 18 at 4.)

A challenge to a plaintiff's standing to bring a particular claim is properly raised in a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction. The Court construes JMFA's motion as a facial challenge to Plaintiffs' complaint. "In addressing a facial attack, the district court must accept the allegations in the complaint as true." *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001).

"[T]he term 'standing' subsumes a blend of constitutional requirements and prudential considerations." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982). To establish standing under Article III of the United States Constitution, a plaintiff must show: (1) that he or she has personally suffered an injury in fact; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely, not merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504

U.S. 555, 560-61 (1992).  Beyond these constitutional requirements, a plaintiff must also satisfy the following prudential principles: (1) the plaintiff generally must assert his or her own legal rights; (2) the court must refrain from adjudicating "generalized grievances"; and (3) the plaintiff's complaint must fall within the zone of interest to be protected or regulated by the statute or constitutional right in question.  *Mount Evans Co. v. Madigan*, 14 F.3d 1444, 1450-51 (10th Cir. 1994).

An organization may, in some situations, have standing to bring claims on behalf of its members.  In order to have "organizational standing," the organization must demonstrate (1) that its members would otherwise have standing to sue in their own right; (2) that the interests the organization seeks to protect are germane to the organization's purpose; and (3) that neither the claim asserted nor the relief requested requires the participation in the lawsuit of the individual members.  *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 342-43 (1977).

JMFA argues that Plaintiffs lack "organizational standing" because they "do not allege that their expulsion from JMFA has caused their *members* any immediate or threatened injury as a result of JMFA's actions, but rather that JMFA's actions have caused the *organizations* themselves immediate or threatened injury because CRN teams will be forced to break up." (Doc. # 18 at 7 (emphasis in original).)  JMFA further argues that the individual members would lack standing to sue in their own right because, individually, they are not prohibited from playing football in JMFA.  (Doc. # 18 at 7.)

4

In response, Plaintiffs argue that they have in fact alleged harm to their members. (Doc. # 19 at 2.) Plaintiffs point to their allegation that, if CRN and HRYFA are not permitted to play in JMFA, "HRYFA will have to break up all six of the CRN teams and most of the approximate 18 HRYFA teams or leave some of the children off of each team." (Doc. # 1 at 19 ¶ 55.) Plaintiffs argue that, if their teams are broken up or certain players are left off teams, "it is reasonable to infer that the separated and abandoned children will suffer emotional and psychological harm" due to the "lost relationships with players, coaches, and other team officials," as well as "the loss of joy from not being able to practice and play with the players and for coaches with whom they have developed relationships over multiple seasons and years." (Doc. # 19 at 2.)

The Court agrees with Plaintiffs. The facts, as alleged by Plaintiffs, lead to the reasonable conclusion that the individual players will be harmed by being wrongfully denied the opportunity to play football with the teams and individuals of their choosing. The Court rejects the argument that the individual players will not suffer harm because they can nevertheless play for a different team. Such reasoning strikes the Court as too similar to the discarded belief that discrimination is not harmful if an "equal" alternative exists. The discrimination itself is the harm. Thus, the Court finds that, contrary to JMFA's argument, Plaintiffs have sufficiently alleged harm to their individual members.

Furthermore, the Court notes that, in addition to having standing to assert claims on behalf of their members, Plaintiffs also have standing in their own right to seek judicial relief from injury to themselves and to vindicate whatever rights and immunities the organizations themselves may enjoy. *See Warth v. Seldin*, 422 U.S. 490, 511

5

(1975) ("There is no question that an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy.")

    B.  **Whether Plaintiffs state a claim under 42 U.S.C. § 1981**

  42 U.S.C. § 1981 guarantees equal rights under the law to all persons within the jurisdiction of the United States. Subsection (a) of the statute specifically enumerates the following rights as protected: the right to "make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981(a). Subsection (c) provides that the rights enumerated in subsection (a) "are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c).

  JMFA argues that Plaintiffs fail to state a claim for relief under 42 U.S.C. § 1981 because Plaintiffs do not allege that JMFA was acting "under color of State law." (Doc. # 18 at 7-10.) To support this argument, JMFA interprets 42 U.S.C. § 1981 to apply against only "nongovernmental actors who are acting under color of State law." (Doc. # 18 at 8.)

  In response, Plaintiffs argue that 42 U.S.C. § 1981 protects against "two sets of harm": (1) impairment of rights by nongovernmental discrimination; and (2) impairment of rights under color of State law. (Doc. # 19 at 4 ¶ 19.) Thus, according to Plaintiffs, they are not required to allege that JMFA was acting under color of State law because

JMFA is nonetheless subject to the statute as a nongovernmental actor.  (Doc. # 19 at 5 ¶ 22.)

The Court agrees with Plaintiffs.  In *Hampton v. Dillard Dept. Stores, Inc.*, 247 F.3d 1091, 1102 (10th Cir. 2001), the Tenth Circuit set forth the elements of a § 1981 claim as follows: "(1) that the plaintiff is a member of a protected class; (2) that the defendant had the intent to discriminate on the basis of race; and (3) that the discrimination interfered with a protected activity as defined in § 1981."  There is no requirement that the defendant was acting under color of state law.  Indeed, in *Hampton*, there was no allegation that the defendant—a private company—was acting under color of state law.  Therefore, in the present matter, Plaintiffs are not required to allege that JMFA was acting under color of State law as JMFA argues.

  **C.**  **Whether Plaintiffs state a claim funder 42 U.S.C. § 1985**

42 U.S.C. § 1985 protects an individual from conspiracies to deprive him or her of "the equal protection of the laws, or of equal privileges and immunities under the laws."  42 U.S.C. § 1985(3).  To state a claim under 42 U.S.C. § 1985(3), a plaintiff must show the following: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of laws, or of equal privileges and immunities under the law; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.  *Griffin v. Breckenridge*, 403 U.S. 88, 91 (1971).  42 U.S.C. § 1985(3) has been interpreted to apply to private conspiracies.  *Id*. at 101.  In addition, the statute has been interpreted to require "some racial, or perhaps

otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Id*. at 102. "The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all." *Id*. The Supreme Court has interpreted 42 U.S.C. § 1985(3) to protect the right to be free from racial discrimination, among other rights. *Life Ins. Co. of North Am. v. Reichardt*, 591 F.2d 499, 503 (9th Cir. 1979) (citing *Griffin*, 403 U.S. at 97).

JMFA argues that Plaintiffs fail to sufficiently allege a "conspiracy" because they fail to allege either "a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective." (Doc. # 18 at 11.) Instead, according to JMFA, "the only JMFA officer that Plaintiffs allege participated in the alleged conspiracy is its president, Jeff Glenn," and "JMFA cannot conspire with itself via only one officer." (Doc. # 18 at 11.) In addition, JMFA argues that Plaintiffs have not properly alleged that they or their members were deprived of any "privilege" or "immunity" under the law because "playing football for a voluntary association is not a constitutionally protected 'right or privilege.'" (Doc. # 18 at 11.)

In response, Plaintiffs argue that their complaint "identifies several votes by the member-associations [of JMFA] adverse to CRN and HRYFA." (Doc. # 19 at 9 ¶ 45.) In addition, Plaintiffs point out that they allege in their complaint that prior to the April 28, 2015 vote to expel HRYFA "JMFA held a secret meeting on a Sunday, at which JMFA planned the expulsion of HRYFA." (Doc. # 19 at 9 ¶ 47.) Plaintiffs argue that "[i]t is a

reasonable inference that more parties than Jeff Glenn attended the meeting, including multiple member-association representatives." (Doc. # 19 at 9 ¶ 48.)

The Court agrees with Plaintiffs. The facts, as alleged by Plaintiffs, lead to the reasonable conclusion that two or more persons acted in concert to perform the alleged improper acts. In addition, the Court believes that Plaintiffs have sufficiently alleged that JMFA's member-association representatives conspired to deprive Plaintiffs of their right to be free from racial discrimination, a right that is protected by 42 U.S.C. § 1985(3). *See Griffin*, 403 U.S. at 97.

      **D.**    **Whether Plaintiffs state a claim under 42 U.S.C. § 2000a**

42 U.S.C. § 2000a protects an individual's "full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). The statute explicitly identifies each the following "establishments" as a "place of public accommodation" within the meaning of the statute if "its operations affect commerce or if discrimination or segregation by it is supported by State action": "any . . . sports arena, stadium or other place of exhibition or entertainment." 42 U.S.C. § 2000a(b)(3). The statute is applicable to an organization but only when that organization is affiliated with a place open to the public and membership in the organization is a necessary predicate to use of the facility." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 756 (9th Cir. 1994).

JMFA argues that "Plaintiffs fail to state a claim for relief under § 2000a because JMFA is not a 'place of public accommodation.'" (Doc. # 18 at 13.) Instead, JMFA

asserts that it is a "private, non-profit organization expressly excluded from the [provisions] of § 2000a." (Doc. # 18 at 13.) In addition, JMFA argues that it "has no ties to any particular facility or establishment, its operation does not affect interstate commerce, and its activities are not support by State action." (Doc. # 18 at 13.)

In response, Plaintiffs argue that JMFA can be considered a "place of public accommodation" because it is "affiliated with 'parks and fields throughout the metropolitan area.'" (Doc. # 19 at 5 ¶¶ 24-25.) Plaintiffs assert that "[t]he games occur on playing fields, which qualify as a type of place that is identified as a 'place of public accommodation' by 42 U.S.C. § 2000a(b)(3) (i.e., sports arena, stadium, or other place of exhibition or entertainment)." (Doc. # 19 at 7 ¶ 32.)

Multiple federal courts have held that Title II of the Civil Rights Act of 1964 (which includes 42 U.S.C. § 2000a) "governs membership organizations that are closely connected to a facility or structure." *See Welsh v. Boy Scouts of Am.*, 993 F.2d 1267, 1272 (7th Cir. 1993) (citing cases). In each of the cases identified in *Welsh*, "Title II was found applicable because the organization conducted public meetings in public facilities or operated facilities open to the public, like swimming pools, gyms, sports fields and golf courses." *Id*. Although not binding, the case *United States v. Slidell Youth Football Ass'n*, 387 F. Supp. 474 (E.D. La. 1974), involved facts similar to the matter at hand. In *Slidell*, the court enjoined a youth football association's "racially discriminatory activities" and ordered it to "eliminate the effects of their past discrimination" in an action brought by the United States under Title II. *Id*. at 486. The court found that the facility owned by the youth football association was a "place of public accommodation" because it

10

constituted a "place of entertainment," as that phrase is used in 42 U.S.C. § 2000a(b)(3). *Id*. at 483. Also of note, the court in *Slidell* found that the youth football association was not a "private club" because participation in it was open to the public. *Id*. at 486.

However, a critical element present in *Slidell* has not been alleged here: whether the defendant's actions affect interstate commerce. In *Slidell*, the court found that the football equipment that the youth football association provided to the players "was manufactured outside the State of Louisiana." *Id*. at 484. This finding was necessary to satisfy § 2000a's requirement that place of public accommodation's operations affect interstate commerce. 42 U.S.C. 2000(a)(b). Plaintiffs here have not alleged that JMFA's operations affect interstate commerce. Neither have Plaintiffs alleged that the "parks and fields throughout the metropolitan area" in which JMFA operates affect interstate commerce. *See, e.g.*, *United States v. Allen*, 341 F.3d 870, 877 (9th Cir. 2003) (identifying the ways in which a public park affected interstate commerce).

If interstate commerce is not affected, the requirements of 42 U.S.C. § 2000a can be satisfied by a showing that the place of public accommodation is "supported in [its] activities by State action." 42 U.S.C. § 2000a(b). Plaintiffs fail to sufficiently allege that JMFA's activities are supported by State action. It is insufficient for Plaintiffs to claim that "JMFA is affiliated with 'parks and fields throughout the metropolitan area.'" (Doc. # 19 at 5 ¶ 25.) A nongovernmental organization's use of public property alone may not suffice to show State action. *See, e.g.*, *Reinhart v. City of Brookings*, 84 F.3d 1071, 1073 (8th Cir. 1996) ("[T]he fact that a private organization was temporarily using public

property [does not] transform its actions into state action."); *United Auto Workers, Local No. 5285 v. Gaston Festivals, Inc.*, 43 F.3d 902, 910 (4th Cir. 1995) ("The possession of a permit to perform on public property what are ordinarily private functions does not convert the permit holder into a state actor.").

Therefore, the Court finds that, because Plaintiffs have not sufficiently alleged either an effect on interstate commerce or the support of State action, Plaintiffs have failed to state a claim under 42 U.S.C. § 2000a, and such claim is properly dismissed without prejudice.

### E.    Whether Plaintiffs state a claim under Colo. Rev. Stat. § 24-34-601

Like 42 U.S.C. § 2000a, Colo. Rev. Stat. § 24-34-601 protects against discrimination in places of public accommodation. In its motion to dismiss, JMFA argues that "Plaintiffs' claim for violation of C.R.S. § 24-34-601 fails for reasons similar to their claim under 42 U.S.C. § 2000a." (Doc. # 18 at 13.) JMFA also argues that Colo. Rev. Stat. § 24-34-601 "is clearly limited to 'places' and JMFA is not in fact a 'place.'" (Doc. # 18 at 14.) JMFA states in its motion that "[i]t does not appear that any Colorado or federal courts have had occasion to consider what constitutes a 'place of public accommodation' under C.R.S. § 24-[3]4-601." (Doc. # 18 at 14.)

The Court looks to federal law to assist it in determining what constitutes a "place of public accommodation" under Colo. Rev. Stat. § 24-34-601. *See, e.g., Colo. Civil Rights Comm'n v. Big O Tires, Inc.*, 940 P.2d 397, 399 (Colo. 1997) (finding federal law "particularly helpful" in approaching employment discrimination case under state law because "the language of the Colorado statute at issue . . . closely parallels that of its

federal counterpart"). As discussed in the previous section, multiple federal courts have found Title II applicable to organizations that "conducted public meetings in public facilities or operated facilities open to the public, like swimming pools, gyms, sports fields and golf courses." *See Welsh*, 993 F.2d at 1272 (citing cases). Federal courts have also found that the Civil Rights Act "is to be afforded a liberal construction in order to carry out the purpose of Congress to eliminate the inconvenience, unfairness, and humiliation of racial discrimination." *United States v. Beach Assocs., Inc.*, 286 F. Supp. 801, 808-09 (D. Md. 1968).

The Court believes that it is proper to give Colo. Rev. Stat. § 24-34-601 a similarly "liberal construction." The Court finds that, like its federal counterpart, Colo. Rev. Stat. § 24-34-601 applies to organizations that conduct activities in facilities, such as parks and sports fields, that are open to the public. Importantly, Colo. Rev. Stat. § 24-34-601 does not include the interstate commerce/State action requirement of 42 U.S.C. § 2000a. Therefore, the Court concludes that Plaintiffs have stated a claim under Colo. Rev. Stat. § 24-34-601.

### F. Plaintiffs' remaining state law claims (breach of contract and breach of the covenant of good faith and fair dealing)

Lastly, JMFA argues that "because Plaintiffs' federal claims must all be dismissed for lack of subject matter or failure to state a claim, Plaintiffs' state law claims should also be dismissed without prejudice." (Doc. # 18 at 15.) However, this argument fails because the Court has not dismissed all of Plaintiffs' federal claims.

### III. CONCLUSION

Thus, for the foregoing reasons, it is hereby

13

ORDERED that JMFA's Motion to Dismiss (Doc. # 18) is GRANTED IN PART AND DENIED IN PART.  Plaintiffs' third claim brought pursuant to 42 U.S.C. § 2000a is dismissed without prejudice.  Plaintiffs' first, second fourth, fifth, and sixth claims remain.

DATED: March 30, 2016                     BY THE COURT:

                                          _____
                                          CHRISTINE M. ARGUELLO
                                          United States District Judge